# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARTIN McGARRY and BRYAN JOHNSON, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 11 C 4601<br>)<br>) Judge Joan H. Lefkow |
| ANTHONY McCLELLAN, JAMES D'AMICO, PATRICK NOLAN, and BRIAN BARON, in their individual capacities. | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiffs Martin McGarry and Bryan Johnson filed a one count complaint against defendants Martin McClellan, James D'Amico, Patrick Nolan, and Brian Baron, in their individual capacities (collectively "defendants"), alleging that defendants harassed, locked out and retaliated against plaintiffs for exercising their First Amendment rights in violation of 28 U.S.C. § 1983. Before the court is defendants' motion to dismiss [#15], which will be denied.[1]

## BACKGROUND[2]

Plaintiffs' complaint stems from incidents that occurred during the course of their employment with the Cook County Facilities Management Department (the "Department"). Johnson worked as a steamfitter and McGarry worked as a steamfitter foreman for the Department. Both men are members of Pipefitters Association Local Union 597 (the "Union"). D'Amico is the director of the Department and McClellan was a deputy director. Nolan is a chief engineer for Cook County and Baron is an assistant chief engineer.

---

[1] The court has jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343(a)(3). Venue is proper under 28 U.S.C. 1391(b)(1) & (2) because all parties reside in the Northern District of Illinois and a substantial part of the events or omissions giving rise to the claim occurred in this district.

[2] The following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion. *See Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).

In or around June 2011, an apprentice for Anchor Mechanical Corporation ("Anchor"), a contractor with political ties to Nolan, began working as a steamfitter for the Department. McGarry complained to McClellan that the apprentice was unqualified and not in the correct union. Thereafter, D'Amico and McClellan wanted to move McGarry's team of steamfitters from their current location at the powerhouse in the Cook County Jail to an unfit storage area in the Cook County courthouse so McGarry could not police whether Union steamfitters were doing jobs in the Department.[3] Plaintiffs' new work space in the courthouse was filthy and McGarry advocated for a different work location during his monthly meetings with McClellan and other foremen. Plaintiffs concluded that defendants were trying to push them out of their jobs in favor of the more costly Anchor by, for example, giving plaintiffs fewer hours and steering contract jobs to Anchor.

In February 2011, during budget time for the next year, plaintiffs learned that all in-house pipefitters were being eliminated and that their work would be put up for bid. Plaintiffs complained to Cook County Commissioners Bridget Gainer and Liz Gorman about what they saw as corruption in Cook County government, specifically, defendants' attempt to steer work to Anchor despite that it would cost the county significantly more money. Eventually, the budget passed without plaintiffs' jobs. Thereafter they were locked out of the powerhouse despite having work orders to complete. Defendants then moved plaintiffs to the south campus to work. Plaintiffs complained to Cook County Sheriff Tom Dart and his chief of staff about defendants' efforts to steer work to Anchor, and the impact that contracting with the more costly Anchor would have on the Sheriff's and the county's budget. Dart immediately set up an accountability meeting with D'Amico, McClellan and Nolan. Thereafter, defendants' harassment of plaintiffs intensified.

---

[3] Plaintiffs were moved to the powerhouse, although when and by whom is not clear from the complaint.

In February 2011, McGarry received a call from McClellan's assistant about an emergency job that required McGarry to get into the locked powerhouse. Plaintiffs drove to the powerhouse and defendant Baron let them in. While there, plaintiffs and two other individuals retrieved paperwork and/or personal property that they had left in the powerhouse. Plaintiffs and other steamfitters drove the work van around the back but they did not have keys to get out and Baron would not let them out until McClellan arrived. McClellan arrived and told plaintiffs that they could not do the emergency job because Anchor was already doing it. Baron and McClellan then accused plaintiffs of stealing and called them disgruntled, violent employees in a report to the Sheriff's police.

The next day plaintiffs arrived at work and all the locks were changed, including the locks on the south campus where plaintiffs' tools were stored. Baron and his employees had thrown out plaintiffs' personal belongings, tools, chairs and desks. McClellan called plaintiffs into his office and accused them of stealing. John Joiner, the previous head of the Department, told McGarry that "you have to walk the plank, get laid off, but if you don't make any more noise, you will be back on the job in a couple of weeks." The next day, plaintiffs were locked out of facilities countywide and D'Amico and McClellan were telling others at the county that plaintiffs were troublemakers and thieves. On March 17, 2011, D'Amico met with McGarry and told him that plaintiffs were locked out because defendants did not trust them. Shortly thereafter the Union business representative told D'Amico that his employees would be back at the powerhouse on Friday morning to do their work. A couple of days later, plaintiffs started setting up to begin working. They were again locked out of the facility and after four hours, McClellan took them off the job. Plaintiffs' jobs were eventually put back into the county budget, but

plaintiffs continue to suffer harassment, retaliation and shortened work hours as a result of their complaints.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

Defendants move to dismiss plaintiffs' complaint under Rule 12(b)(6) because (1) plaintiffs did not make their speech as concerned citizens, but rather as public employees; and (2) plaintiffs' speech was not on a matter of public concern. "[T]he First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the government from retaliating against its employees for engaging in protected speech." *Gross* v. *Town of Cicero, Ill.*, 619 F.3d 697, 703-04 (7th Cir. 2010). To state a retaliation claim under § 1983, a plaintiff must show that "(1) his speech was constitutionally protected; (2) the protected speech was a but-for cause of the employer's action; and (3) he suffered a deprivation because of the

employer's action." *Wackett* v. *City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). Public employees do not surrender their First Amendment rights by reason of their employment, and "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti* v. *Ceballos*, 547 U.S. 410, 419, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). The threshold inquiry, therefore, is whether the individual was speaking as a citizen or as a public employee. The Supreme Court has stated that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. This is because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421-22; *see also Abcarian* v. *McDonald,* 617 F.3d 931, 935-37 (7th Cir. 2010) (applying *Garcetti* to bar a retaliation claim brought against individual defendants).

### A. Whether plaintiffs spoke as "citizens" or "public employees"

To determine whether a plaintiff spoke as an employee or as a citizen, the court must "take a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made." *Abcarian*, 617 F.3d at 937. After *Garcetti*, focusing on whether the employee's speech was part of his core job functions is too narrow an inquiry. *Spiegla* v. *Hull*, 481 F.3d 961, 966 (7th Cir. 2007). Rather, the relevant question is whether "the expression [was] something done pursuant to the employee's professional duties? If so, then the First Amendment has no application." *Davis* v. *Cook Cnty.*, 534 F. 3d 650, 653 (7th Cir. 2008); *see also Callahan* v. *Fermon*, 526 F.3d 1040, 1041 (7th Cir.

5

2008) ("The controlling factor in the *Garcetti* inquiry is whether the speech 'owes its existence to a public employee's professional responsibilities.'" (internal quotation marks and citation omitted)). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Vose* v. *Kliment*, 506 F.3d 565, 569 (7th Cir. 2007). The inquiry is one of law, not fact. *Connick* v. *Myers*, 461 U.S. 138, 148 n.7, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

Plaintiffs allege that they spoke as citizens on two occasions when they (1) complained to Cook County Commissioners Gainer and Gorman about what they saw as corruption in Cook County government, specifically, defendants' attempt to steer work to Anchor despite the fact that it would cost the county significantly more money; and (2) complained to Sheriff Dart and his chief of staff about what was happening to plaintiffs and the effect that steering Union work to Anchor would have on the Sheriff's and the county's budget. Defendants argue that plaintiffs' complaints are not protected by the First Amendment because reporting the steering away of Union contracts was among plaintiffs' responsibilities as Union members, and plaintiffs were in the practice of making such complaints when they felt they were losing work.[4]

The relevant inquiry, however, is whether plaintiffs' speech was made pursuant to their *professional* responsibilities, not their Union responsibilities, and defendants cite no authority for the position that the two inquiries are related. The complaint is silent as to the nature of plaintiffs' day-to-day job responsibilities, plaintiffs' prior practice in reporting complaints, and

---

[4] Defendants also argue that because plaintiffs' supervisors were responsible for reassigning the work plaintiffs were forced to go outside the chain of command to voice their concerns. Although complaining to personnel outside the employee's chain of command may, in some instances, support the inference that the plaintiff was speaking as a public employee, *see Barton* v. *City of Harvey*, No. 08-cv-4510, 2009 WL 249376, at *3 (N.D. Ill. Jan. 28, 2009) (plaintiff spoke as a public employee where supervisor was misappropriating funds and it was necessary for plaintiff to lodge complaint outside his chain of command), it is not dispositive of a motion to dismiss. *See Callahan*, 526 F.3d at 1044 ("[T]he location and audience of the employee's speech are not dispositive."); *accord Fulk* v. *Village of Sandoval, Ill.*, No. 08-843-GPM, 2010 WL 1132560, at *3 (S.D. Ill. Mar. 19, 2010).

what duty, if any, plaintiffs owed their Union. Unlike the cases cited by defendants where the complaining employee possessed some supervisory authority over the matter for which he or she complained, it is unclear from the record what supervisory duties, if any, plaintiffs possessed.[5] *See Trigillo* v. *Snyder*, 547 F.3d 826, 830 (7th Cir. 2008) (manager of procurement spoke as a public employee when she complained about her department's procurement practices); *Vose*, 506 F.3d at 570 (narcotics unit supervisor spoke as a public employee when he reported wrongdoing in another unit because the alleged misconduct could have directly affected his unit); *see also Barton* v. *City of Harvey*, No. 08-cv-4510, 2009 WL 249376, at *3 (N.D. Ill. Jan. 28, 2009) (parking lot general foreman spoke as a public employee because reporting misappropriation of public funds was among his general responsibilities as the employee charged with reconciling parking tickets with bank slips). Without more, the court cannot find as a matter of law that plaintiffs were acting as public employees and not concerned citizens when they made their complaints. *See, e.g., Kodrea* v. *City of Kokomo, Ind.*, 458 F. Supp. 2d 857, 868 (S.D. Ind. 2006) (finding genuine issue of material fact regarding whether employee's complaints were made as a "citizen" where the parties disputed the scope of the employee's job responsibilities).

   B.   **Whether plaintiffs' speech addressed a matter of public concern**

To determine whether an employee's speech addresses a matter of public concern, the court looks at "'the content, form, and context of a given statement, as revealed by the whole record.'" *Nagle* v. *Vill. of Calumet Park,* 554 F.3d 1106, 1123 (7th Cir. 2009) (quoting *Connick,* 461 U.S. at 147-48). "Speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections." *Houskins* v. *Sheahan*,

---

[5] McGarry was a Union foreman, which is typically a managerial position, but the complaint is silent as to the scope of his professional responsibilities.

549 F.3d 480, 491-92 (7th Cir. 2008). "The fact that an employee has a personal stake in the subject matter of the speech does not necessarily remove the speech from the scope of public concern, however." *Button* v. *Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998)); *see Chicago United Indus., Ltd.* v. *City of Chicago*, 685 F. Supp. 2d 791, 813 (N.D. Ill. 2010) ("While courts consider the motive of the speaker as part of the 'context' in which the speech was made, it is not dispositive."). Rather, courts consider whether the subject matter of the speech is potentially of interest to the public. *See Bivens* v. *Trent*, 591 F.3d 555, 560 (7th Cir. 2010); *Chaklos* v. *Stevens*, 560 F.3d 705, 714 (7th Cir. 2009) (content of the speech remains the most important factor in determining whether it addresses a matter of public concern).

Plaintiffs complained about the steering away of work to a more costly, politically connected contractor. "It is well established that speech protesting government waste or the misuse of public funds addresses a matter of public concern and therefore is entitled to constitutional protection." *Chicago United Indus. Ltd.*, 685 F. Supp. 2d at 813; *see Miller* v. *Jones*, 444 F.3d 929, 936 (7th Cir. 2006) ("Our cases have consistently held that speech alleging government malfeasance addresses matters of public concern in its substance."). Defendants argue that plaintiffs were not protesting government waste but, rather, attempting to obtain more work for themselves from the county. Their motivations, argue defendants, were purely personal. Reading the complaint in the light most favorable to plaintiffs, however, the court must disagree. Plaintiffs allege they were motivated to expose "the waste and wrongdoing they observed in their department," specifically, to bring to light the effect that defendants' actions' would have "on the Sheriff's and the [c]ounty's budget." (Compl. ¶¶ 1, 18.) It is plausible that plaintiffs were motivated by more than just their personal interests when they complained to

Commissioners Gainer and Gorman and Sheriff Dart.[6]  This is sufficient to survive a motion to dismiss.  *See, e.g., Reiff* v. *Calumet City*, --- F. Supp. 2d ----, 2011 WL 3839713, at *8 (N.D. Ill. Aug. 30, 2011) (stating that "[b]ecause the court does not have a complete record before it regarding the content, form and context of the speech, it cannot ascertain whether the plaintiff's speech involved a matter of public concern," but denying motion to dismiss after construing facts in light most favorable to the plaintiff); *see Johnson* v. *Cnty. of Cook*, No. 08 C 2139, 2009 WL 331531, at *4 (N.D. Ill. Feb. 10, 2009) (stating that "[t]here is simply no way, on a motion to dismiss, that the Court can determine whether the plaintiffs in this case sought to bring to light actual or potential wrongdoing or breach of public trust" (quotations omitted)).

**ORDER**

Defendants' motion to dismiss [#15] is denied.  Defendants are directed to answer the complaint within fourteen days.  This case is set for a scheduling conference on July 5, 2012.

ENTER:

Dated: June 4, 2012

_____
JOAN HUMPHREY LEFKOW
United States District Judge

---

[6]  Defendant argues that because plaintiffs expressed their complaints in a private meeting with the Commissioners and Sheriff Dart that their expression addressed only the personal effects on plaintiffs of not getting certain work orders.  (Def.s' Reply at 3); *see Bivens*, 591 F.3d at 561 ("[I]f the speech concerns a subject of public interest, but the expression addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern." (internal quotations and citation omitted)).  It is reasonable to infer from the complaint, however, that plaintiffs' speech concerned not only the impact that defendants' actions had upon them, but also upon the Sheriff's Department and county as a whole.

9